+ UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL R. FLOYD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:15CV1145 JCH |
| ) | |
| CINDY GRIFFITH, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Michael R. Floyd's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is fully briefed and ready for disposition.

On May 19, 2010, a jury in the Circuit Court of St. Louis City, Missouri, found Petitioner guilty of one count of murder in the first degree, and one count of armed criminal action. On July 16, 2010, Petitioner was sentenced to life imprisonment without the possibility of parole, and a concurrent term of thirty years imprisonment. The Missouri Court of Appeals affirmed the convictions and sentence. *State v. Floyd*, 347 S.W.3d 115 (Mo. App. 2011). Petitioner thereafter filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied without an evidentiary hearing. The Missouri Court of Appeals affirmed the denial of post-conviction relief. *Floyd v. State*, 461 S.W.3d 846 (Mo. App. 2015).

Petitioner is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri. In the instant petition for writ of habeas corpus, Petitioner raises the following four claims for relief:

(1) That the trial court erred in denying Petitioner's motion to suppress identification;

(2) That the trial court erred in admitting the rebuttal testimony of Detective Hanewinkel;

(3) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to object to the hearsay testimony offered by Detective James Stagge; and

(4) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to locate, interview, endorse and subpoena Ms. Marian Henderson, Mr. Justin Briggs[1], and Mr. Ricardo Graham to testify at trial.

The Court will address the claims in turn.

## DISCUSSION

**I.     Procedural Default**

As stated above, in Ground 1 of his petition Petitioner asserts the trial court erred in denying his motion to suppress identification. (§ 2254 Petition, Attached Supplement PP. 2-3). Specifically, Petitioner claims the trial court erred in admitting evidence that he was identified as the shooter through both a photo spread and a physical lineup, because the identification procedures were so suggestive as to create a substantial likelihood of misidentification. Petitioner raised this claim on direct appeal of his convictions, but the Missouri Court of Appeals found it could review Petitioner's claim only for plain error, because neither his pretrial motion to suppress identification nor his new trial motion indicated why the identifications were impermissibly suggestive or unreliable. *State v. Floyd*, 347 S.W.3d at 124-25.

"Claims that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted." *Skillicorn v. Luebbers*, 475 F.3d 965, 976 (8th Cir.) (citation omitted), *cert. denied*, 552 U.S. 923 (2007). "To avoid defaulting on a claim, a petitioner

---

[1] Petitioner refers to Mr. Briggs as "Mr. Justin Buggs" in his petition. The Missouri Court of Appeals refers to him

seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording such courts a fair opportunity to apply controlling legal principles to the facts bearing upon [the] claim." *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir.) (internal quotations and citations omitted; alteration in original), *cert. denied*, 540 U.S. 870 (2003). "A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition." *Id.* at 1021 (internal quotations and citations omitted).

In a recent case, the Eighth Circuit Court of Appeals held that a state court's plain error review does not cure a procedural default, and thus federal habeas review is possible only if the petitioner demonstrates cause and prejudice for the default. *Clark v. Bertsch*, 780 F.3d 873, 875-76 (8th Cir. 2015). Petitioner has neither asserted nor shown cause for or prejudice as a result of his failure to raise the grounds underlying this claim in his pretrial motion to suppress identification or his new trial motion. The claim raised in Ground 1 of the instant petition thus is procedurally defaulted and must be denied.

Even if the Court were able to address the merits of Petitioner's claim in Ground 1 of his petition, the claim would not provide him with a basis for habeas relief. The Missouri Court of Appeals thoroughly reviewed the claim for plain error and found none, as follows:

> Floyd complains that the trial court erred in overruling his motion to suppress identification and in admitting State's exhibit 70, the photo lineup, and State's exhibit 72 and 73, photographs of the physical lineup. Floyd asserts that the identification procedures were unduly suggestive and the identification unreliable because "[p]olice used a photo lineup in which Mr. Floyd was the most light-complected person depicted, and later conducted a physical lineup in which Mr. Floyd was the only repeat player, and one of only two men whose skin complexion and dress resembled that of the shooter."
>
> Floyd filed a pretrial motion to suppress identification, which the court took with the case. At trial, Floyd objected "subject to his pretrial motion" to exhibits 70, 72, and 73,

---

as Mr. Briggs, however, and for the sake of consistency the Court will do so in this Order as well.

which the court overruled.  Neither Floyd's pretrial motion nor new trial motion indicated why the identifications were impermissibly suggestive or unreliable.  Accordingly, the argument is not preserved and review is for plain error.  *Moore,* 303 S.W.3d at 522–23; *State v. Rasheed,* 340 S.W.3d 280, 287 (Mo.App. E.D. 2011).  Floyd's argument does not show evident, obvious, and clear error.

Identification testimony is admissible unless the pretrial identification procedure is impermissibly suggestive, and this suggestive procedure made the identification unreliable.  *State v. Middleton,* 995 S.W.2d 443, 453 (Mo. banc 1999).  "A pre-trial identification procedure is unduly suggestive if the identification results not from the witness's recollection of first-hand observations, but rather from the procedures or actions employed by the police."  *State v. Chambers,* 234 S.W.3d 501, 513 (Mo.App. E.D. 2007).  "The key issue in determining whether unduly suggestive pre-trial procedures tainted the identification is whether the witness has an adequate basis for the identification independent of the suggestive procedure."  *Id.*  "Identification evidence will be excluded as impermissibly suggestive 'only when the procedure was so suggestive that it gave rise to a very substantial likelihood of irreparable misidentification.'"  *State v. Lewis,* 874 S.W.2d 420, 424 (Mo.App. W.D. 1994) (citation omitted).

In determining the reliability of a witness's identification, we consider:  (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of any prior description given by the witness; (4) the level of certainty demonstrated by the witness in making the identification; and (5) the interval between the event and the identification procedure.  *Middleton,* 995 S.W.2d at 453.  However, the defendant must establish that the police procedures were impermissibly suggestive before review of the reliability of the identification is necessary or appropriate.  *State v. Vinson,* 800 S.W.2d 444, 446 (Mo. banc 1990); *State v. Allen,* 274 S.W.3d 514, 526 (Mo.App. W.D. 2008); *Chambers,* 234 S.W.3d at 513.

"Dissimilarity in physical appearance, alone, is insufficient to establish impermissible suggestion."  *Chambers,* 234 S.W.3d at 513.  Because courts normally only require the police to use reasonable efforts to find physically similar participants in a photo lineup, "differences in age, weight, height, hairstyle, and other physical characteristics do not compel a finding of impermissible suggestiveness."  *Id.* at 514.  Since only identical twins can be identical in a lineup and as long as no one individual clearly stands out in the lineup, "[t]he law does not require exact conformity to ensure an untainted identification procedure."  *State v. Williams,* 18 S.W.3d 425, 432 (Mo.App. S.D. 2000); *State v. Montgomery,* 596 S.W.2d 735, 737 (Mo.App. E.D. 1980).  Police are only required to find physically similar participants, even if a defendant has a physical abnormality or very distinctive appearance, as no lineup in that type of situation can be expected to provide subjects reasonably close in appearance.  *State v. Cooks,* 861 S.W.2d 769, 772 (Mo.App. E.D. 1993).

The record taken in its entirety fails to demonstrate that the police took any action which made either the photo or the physical lineup impermissibly suggestive.  Floyd's first complaint that he was the only participant in both the photo and physical lineups did not render either lineup impermissibly suggestive.  *State v. Williams,* 277 S.W.3d 848, 851

(Mo.App. E.D. 2009).

Detective Hanewinkel prepared the photo lineup of six individuals which included Floyd. He used a computer to help select the other five individuals. After the computer generated several hundred possibilities based upon the race and build of Floyd, Detective Hanewinkel selected the hairstyle. From the computer-generated photos, Detective Hanewinkel selected five fillers for the photo lineup. Given that all six individuals in the photo lineup were of the same race, similar hairstyle, and general age, Floyd's complaint that he was the most light-complected individual in the photo lineup alone did not make the photo lineup impermissibly suggestive.

Floyd also asserts that he was the only light-complected individual in the four-person physical lineup, and that Floyd and only one other individual wore a black hoodie. Detective Hanewinkel testified that a detective will take the defendant around the jail and find other inmates that "have similar characteristics as the defendant, height, weight, hairstyle, skin tone, things like that." The physical lineup contained four individuals who were all similar in age and race, three had very similar hairstyles to Floyd, one was the exact height and build as Floyd, while Floyd had the lightest complexion. Again, when these facts are viewed in their totality, the physical lineup was not impermissibly suggestive.

Floyd next contends that the police procedures used for the physical lineup were unduly suggestive because Abram asked if each person in the physical lineup would put their hood up, because that is how she saw the suspect. "[A] lineup is made unduly suggestive when the suggestiveness results from police procedures." *State v. Glover,* 951 S.W.2d 359, 363 (Mo.App. W.D. 1997). A lineup is not unduly suggestive when the alleged "taint" in the identification procedure originates from a nongovernmental source. *Id.* The alleged "taint" with Abram's identification in having the individuals in the physical lineup put on their hoods or raise their collars originated from a nongovernmental source, the eyewitness, and not from a procedure used by the police. Further, the raising of the hoods or collars enhanced the eyewitness's ability to identify the murderer. *See Lewis,* 874 S.W.2d at 424–25. The method used by Abram when she viewed the physical lineup goes to the reliability of the identification and not the suggestiveness of the lineup. *See id.* In addition, Floyd's assertion that Abram only saw the shooter in a hoodie that covered his head also goes to the reliability of the identification.

The record demonstrates that the photo and physical lineups were not impermissibly suggestive. Floyd's second point is denied.

*State v. Floyd*, 347 S.W.3d at 124-26.

With respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Brown v. Luebbers,* 371 F.3d 458, 466 (8th Cir. 2004) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)), *cert. denied*, 543 U.S. 1189 (2005). "Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Rousan v. Roper,* 436 F.3d 951, 958 (8th Cir.) (internal quotations and citation omitted), *cert. denied*, 549 U.S. 835 (2006). A federal court should "reverse a state court evidentiary ruling only if the petitioner ... show[s] that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Anderson v. Goeke,* 44 F.3d 675, 679 (8th Cir. 1995) (internal quotations and citations omitted).

Upon consideration, the Court finds the Missouri court's method of determining admissibility was not contrary to federal law. *See United States v. Martin*, 391 F.3d 949, 952 (8th Cir. 2005) (internal quotations and citations omitted) (to determine whether identifications were unreliable, the court considers whether the photographic spreads were "impermissibly suggestive," and if so, whether "under the totality of the circumstances of the case, the suggestive confrontation created a

very substantial likelihood of irreparable misidentification."[2]). Furthermore, the Missouri court carefully weighed the relevant factors, and concluded the identifications were not unduly suggestive. This finding was not unreasonable in light of the evidence presented in the State court proceeding, and so the admission of the identifications was not so egregious as to render Petitioner's trial fundamentally unfair. The decision of the Missouri court thus is entitled to deference, and Ground 1 is denied.

## II. Claims Addressed On The Merits

### A. Ground 2

As stated above, in Ground 2 of his petition Petitioner asserts the trial court erred in admitting the rebuttal testimony of Detective Hanewinkel. (§ 2254 Petition, Attached Supplement PP. 3-5). Specifically, Petitioner claims the testimony bore upon a collateral issue, went beyond the permissible scope of rebuttal, and was inadmissible. Petitioner raised this claim on direct appeal of his convictions, and the Missouri Court of Appeals denied the claim as follows:

> Floyd argues that the trial court erred in allowing the State to call Detective Hanewinkel as a rebuttal witness to testify about Floyd's statement that the State used to rebut defendant's alibi witness Washington, in that "his [Detective Hanewinkel] testimony bore upon a collateral issue, went beyond the permissible scope of rebuttal, and was inadmissible."….
>
> "The trial judge determines the scope of rebuttal testimony, subject to review for abuse of discretion." *State v. Gardner,* 8 S.W.3d 66, 72 (Mo. banc 1999) (citing *State v. Leisure,* 749 S.W.2d 366, 380 (Mo. banc 1988)). "A trial court has broad discretion in determining the admissibility and scope of rebuttal evidence." *State v. Smith,* 265 S.W.3d 874, 878 (Mo.App. E.D. 2008) (citing *State v. Hurley,* 208 S.W.3d 291, 293 (Mo.App. S.D. 2006)). "This Court will not hamper the exercise of that discretion unless it is clear that the trial court's ruling is against the logic of the circumstances and is 'so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Id.* (citation omitted).

---

2 To determine whether an identification procedure creates a substantial likelihood of irreparable misidentification, the court considers factors such as "the opportunity of the witness to view the suspect during the commission of the crime; the witness's degree of attention; the accuracy of the witness's prior description of the suspect; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation." *Martin*, 391 F.3d at 953 (internal quotations and citations omitted).

"Mere error is insufficient to support a reversal; this court will affirm the trial court's judgment unless the appellant shows that the error was so prejudicial as to deprive him of a fair trial." *State v. Martin,* 211 S.W.3d 648, 653 (Mo.App. W.D. 2007) (citing *State v. Hamilton,* 892 S.W.2d 371, 380 (Mo.App. E.D. 1995)). "The test for prejudice where a criminal appellant claims improper admission of evidence 'is whether the improper admission was outcome-determinative.'" *Id.* (citing *State v. Black,* 50 S.W.3d 778, 786 (Mo. banc 2001)).

"'Any competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant may be offered in rebuttal of the defendant's testimony or evidence.'" *Gardner,* 8 S.W.3d at 72 (citing *State v. Peterson,* 518 S.W.2d 1, 3 (Mo. banc 1974)). "[R]ebuttal testimony is not necessarily inadmissible simply because it is cumulative of the state's evidence-in-chief or because it would have been better procedure to offer it as part of the state's evidence-in-chief instead of rebuttal." *State v. Petty,* 967 S.W.2d 127, 141 (Mo.App. E.D. 1998) (citing *State v. Arnold,* 859 S.W.2d 280, 282 (Mo.App. E.D. 1993)). Further, if the defendant raises an issue directly or by implication, the prosecutor can present otherwise "inadmissible testimony to counteract the negative inference the defense has injected into the case." *Martin,* 211 S.W.3d at 653 (citing *Hamilton,* 892 S.W.2d at 379).

The trial court did not err or abuse its discretion in allowing the rebuttal testimony of Detective Hanewinkel. Floyd filed his pretrial notice of alibi that he was in St. Charles at the time of Robinson's murder, and he listed Ms. Floyd and Washington as alibi witnesses. At trial, Floyd presented Washington's testimony as his alibi that he was in St. Charles County. In particular, Washington testified that she left Floyd at her apartment when she went to work between the hours of 8:00 a.m. and 4:00 p.m. and picked up Floyd at her apartment after she left work. Washington did not know where Floyd was between the hours of 8:00 a.m. and 4:00 p.m. on March 11, 2008.

Floyd's statement to Detective Hanewinkel used in rebuttal by the State impeached and partially contradicted Washington's testimony as Floyd originally alleged upon his arrest that he was with Washington the entire day of March 11, 2008, and Floyd further failed to mention that Washington was at work. Where Floyd was on March 11, 2008 is neither a collateral issue, nor inadmissible in rebuttal. By calling Washington as a witness, Floyd placed Washington's alibi testimony directly at issue. While Floyd's statement to Detective Hanewinkel did not directly refute Floyd's alibi, it indirectly rebutted the testimony of the alibi witness, Washington, by undercutting her credibility. *State v. Roberts,* 622 S.W.2d 226, 226–227 (Mo.App. E.D. 1981).

By placing Washington on the stand, Floyd opened himself up to the State's rebuttal. It was no small detail left out of Floyd's statement that Washington left Floyd at the apartment while she went to work on March 11, 2008; those inconsistencies were extremely probative for the State. Further, when you contrast the State's timeline that Lieutenant Robinson saw Floyd outside Yeatman School before 2:50 p.m., witness Bolhous saw the shooting immediately after dismissal of school at 2:50 p.m., and witness Abram actually saw Floyd shoot Robinson, with Floyd's timeline from Washington's alibi testimony and Floyd's

statement, Floyd's complaint has no merit as these timelines demonstrate the propriety of the State's rebuttal evidence.

*State v. Floyd*, 347 S.W.3d at 121-23.

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Upon consideration, the Court finds the Missouri Court of Appeals' determination that the trial court did not abuse its discretion in allowing the rebuttal testimony of Detective Hanewinkel was not contrary to, nor an unreasonable application of, federal law. As previously stated, admissibility of evidence is a matter of state law, and this Court may grant habeas relief only if the state court's evidentiary ruling infringes upon a specific constitutional right or is so prejudicial that it denies the petitioner his right to due process. *Palmer v. Clarke.* 408 F.3d 423, 436 (8th Cir.), *cert. denied*, 546 U.S. 1042 (2005). Thus, to raise a federal issue Petitioner must demonstrate that the alleged error was "'so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair.'" *Garcia v. Mathes,* 474 F.3d 1014, 1017 (8th Cir. 2007) (quoting *Rousan v. Roper,* 436 F.3d 951, 958-59 (8th Cir. 2006)). This Court's review of the record reveals that the trial court's admission of Detective Hanewinkel's testimony was not so egregious that it fatally infected the trial and rendered it fundamentally unfair. Instead, the state court relied upon sound law to

determine that such testimony properly contradicted Petitioner's evidence at trial. "'The function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party.'" *United States v. Azure,* 845 F.2d 1503, 1508 (8th Cir. 1988) (quoting *United States v. Luschen,* 614 F.2d 1164, 1170 (8th Cir. 1980)). The record demonstrates that Detective Hanewinkel's testimony did exactly that--it explained, repelled, counteracted, and/or disproved Petitioner's evidence. Ground 2 of Petitioner's § 2254 petition will therefore be denied.

### B. Ground 3

As stated above, in Ground 3 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to object to the hearsay testimony offered by Detective James Stagge. (§ 2254 Petition, Attached Supplement PP. 5-6). Specifically, Petitioner claims the anonymous information Detective Stagge testified to was asserted by unverified witness(es), and was presented for the truth of the matter therein, thus violating Petitioner's right to confront the witness(es) against him. Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

> 3. Movant's[3] remaining claim is that his attorney was ineffective for failing to object to testimony by Detective Skagge regarding what he heard at the scene. Movant claims this evidence was inadmissible hearsay.
>
> Ineffectiveness of counsel is rarely found in cases where trial counsel has failed to object. Johnson v. State, 330 S.W.3d 132, 139 (Mo.App. W.D. 2010). Failure to object constitutes ineffectiveness only when a substantial deprivation of the right to a fair trial is involved. Johnson v. State, 330 S.W.3d 132, 139 (Mo.App.W.D. 2010). Counsel is not ineffective for failing to make meritless objections. Middleton v. State, 103 S.W.3d 726, 741 Mo. banc 2003); Cole v. State, 302 S.W.3d 812, 819 (Mo.App. E.D. 2010). Counsel has no duty to object to admissible evidence. State v. Powell, 793 S.W.2d 505, 509 (Mo.App. 1990).

---

3 Petitioner is referred to as "Movant" by both the 29.15 post-conviction motion court and the Missouri Court of Appeals.

> The Court finds this claim is without merit as it is clear that this testimony was offered for the non-hearsay purpose of explaining the subsequent investigation by the police and it was not offered to prove that movant was the perpetrator. Detective Stagge testified at the trial he received a request for a gang unit detective. He responded to the scene dressed in plain clothes and stood in the back of the crowd that had gathered at the murder scene. He recognized several people from the neighborhood and was told that "Fat Loc" had committed the murder. Detective Stagge associated the name Fat Loc with movant and gave this information to the homicide detectives.

(Resp.'s Exh. F, PP. 58-60). Petitioner advanced the claim on appeal of the denial of his Rule 29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

> Det. Stagge is a St. Louis Metropolitan Police Detective assigned to the Gang Unit. On March 11, 2008, he received a call for a homicide and a request for a Gang Unit detective. Det. Stagge was dressed in plain clothes and stood in the back of the crowd that had gathered at the murder scene. Det. Stagge testified without objection that he recognized several people from the neighborhood and was told "Fat Loc" had committed the murder. Det. Stagge had heard the name "Fat Loc" before and associated it with Movant. Det. Stagge gave this information to the homicide detectives.
>
> On appeal, Movant argues his trial counsel was ineffective for failing to object to Det. Stagge's testimony because it was inadmissible hearsay and it went beyond what was necessary to explain subsequent police conduct.
>
> As already noted, hearsay statements are out-of-court statements that are used to prove the truth of the matter asserted and, as a rule, are inadmissible. Douglas, 131 S.W.3d at 823. Not all out-of-court statements are hearsay; the statement must be offered for the truth of the matter asserted to constitute hearsay. Id. Hence, out-of-court statements offered not for the truth of the matter asserted, but instead to explain subsequent conduct, are not hearsay and are admissible assuming they are relevant. State v. Edwards, 116 S.W.3d 511, 533 (Mo. banc 2003); Douglas, 131 S.W.3d at 824. "However, when such out-of-court statements go beyond what is necessary to explain subsequent police conduct, they are hearsay…unless they qualify as non-hearsay on another basis." Douglas, 131 S.W.3d at 824.
>
> Here, Det. Stagge's testimony was limited and was not offered to prove the truth of the matter asserted but to explain subsequent conduct. Det. Stagge's testimony was not offered to prove Movant actually committed the crime but to explain the circumstances that caused Movant to become the focus of the police investigation. Accordingly, we find Det. Stagge's testimony that he heard "Fat Loc" did the shooting and Movant's association with that name was reasonably aimed to explain the police's subsequent action and was not inadmissible hearsay. Therefore, any objection to Det. Stagge's testimony would have been without merit and Movant has failed to show that the asserted objection to error would have been upheld if it had been made by trial

counsel. Counsel will not be deemed ineffective for failing to make nonmeritorious objections. State v. Clay, 975 S.W.2d 121, 135 (Mo. banc 1998). Movant's Point II is denied.

(Resp. Exh. I, PP.7-8).

As noted above, with respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under federal law, in order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.*

Upon consideration the Court finds that with this claim, Petitioner fails to demonstrate that his counsel's performance was constitutionally deficient. As found by the post-conviction motion court and the Missouri Court of Appeals, "out-of-court statements offered not for the truth of the matter asserted, but instead to explain subsequent conduct, are not hearsay and are admissible assuming they are relevant." (Respondent's Exh. I, P. 8; *see also United States v. Shores*, 700 F.3d 366, 374 (8th Cir. 2012) (internal quotations and citations omitted) ("Where an out-of-court statement is offered not for the truth of the matter asserted but rather to explain the reasons for or propriety of a police investigation, then it is not hearsay and does not implicate the Confrontation Clause"), *cert. denied*, 133 S.Ct. 2780 (2013)). Any objection to Detective Stagge's testimony raised by Petitioner's attorney thus would have been overruled, and "[w]here an underlying claim or objection has no merit, counsel's failure to raise the claim or make the objection at trial cannot constitute ineffective assistance." *Davis v. Roper*, 2011 WL 7063647, at *8 (E.D. Mo. Nov. 30, 2011) (citing *Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010)). As such, the decision of the state courts that counsel was not ineffective for failing to object to Detective Stagge's testimony was neither contrary to nor an unreasonable application of clearly established federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented. Ground 3 of Petitioner's § 2254 petition must therefore be denied.

**C.    Ground 4**

As stated above, in Ground 4 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to locate, interview, endorse and subpoena Ms. Marian Henderson, Mr. Justin Briggs, and Mr. Ricardo Graham to testify at trial, (§ 2254 Petition, Attached Supplement PP. 6-7). Specifically, Petitioner claims the omitted witnesses would have

testified that the perpetrator of the crimes at issue was not Petitioner. Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

> 2. The first claim in movant's amended motion is that his trial attorney, Paul Yarns, was ineffective for failing to locate and call Marian Henderson, Justin Briggs and Ricardo Graham at movant's trial. Movant claims Ms. Henderson would have testified that someone named "T-Dub" had threatened to kill Virgil Robinson, the victim of the murder, at some unspecified time. Movant claims Justin Briggs lived near the 4400 block of Athalone, witnessed the shooting and "saw the shooter was not Mr. Floyd." Movant claims Ricardo Graham was a security officer at Yeatman school, witnessed the shooting and "knows Mr. Floyd was not the shooter."
>
> To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his counsel's performance failed to conform to the degree of skill, care and diligence of a reasonably competent attorney and that he was thereby prejudiced. Williams v. State, 168 S.W.3d 433, 439 (Mo. banc 2005); Wilkes v. State, 82 S.W.3d 925, 927 (Mo. banc 2002). A movant bears a heavy burden when attempting to show that counsel was ineffective. Giammanco v. State, 416 S.W.3d 833, 838 (Mo.App. E.D. 2013). There is a presumption that counsel made all significant decisions in the exercise of his reasonable professional judgment and that any challenged action was part of counsel's sound trial strategy. State v. Tokar, 918 S.W.2d 753, 761 (Mo. banc 1996).
>
> The selection of witnesses and the decision not to call additional witnesses are matters of trial strategy. Avery v. State, 770 S.W.2d 440 (Mo.App. 1989). A decision not to call a witness is a matter of trial strategy that is virtually unchallengeable. Worthington v. State, 166 S.W.3d 566 (Mo. banc 2005); Childress v. State, 248 S.W.3d 653, 655 (Mo.App. S.D. 2008). In order to be entitled to relief on the ground that counsel failed to call witnesses movant must identify who the witnesses were and prove that counsel knew or should have known of their existence, establish that the witnesses could have been located through reasonable investigation, the witnesses would have testified if called and their testimony would have provided a viable defense. Vaca v. State, 314 S.W.3d 331, 335-336 (Mo. banc 2010); Hutchison v. State, 150 S.W.3d 292, 304 (Mo. banc 2004). The witnesses' testimony must be more than merely cumulative of the evidence adduced at trial. State v. Smith, 949 S.W.2d 947, 952 (Mo.App. W.D. 1997); Henderson v. State, 770 S.W.2d 422 (Mo.App. 1989). If a potential witness' testimony would not have unqualifiedly supported the movant, the failure to call such witness is not ineffective assistance of counsel. Worthington v. State, 166 S.W.3d 566, 577 (Mo. banc 2005).
>
> April Abram, a witness for the State, testified at the trial that she saw Virgil Robinson and Jodeci Brown approach the corner of Holly and Carter and turn the corner towards a store on Athalone. She saw movant, who was wearing a white jacket, white pants with red stripes, and a red and white cap on his head put his hoodie on as he walked up to Robinson and shoot him three times. Movant then walked across the yard of Yeatman School, jogged off and disappeared. Abram picked movant out of a photo array, identified him in a live lineup and identified him at trial. Detective Hanewinkel testified he compiled the photo

lineup with photographs generated by a computer based upon race and build, and Abram instantly picked out movant.

Jodeci Brown testified he did not see the shooter's face. He did not want to get involved and did not talk to the police. He testified he was walking with Robinson when he started to hear shots. He was shot as was Robinson. Brown turned around and saw somebody standing over Robinson, and he saw a white car "sittin' right there with black tint." He thought the car was a Pontiac with a Z34 on the side. Brown said the shooter had a hoodie on over his head and he could not see the shooter's face. Brown knew movant from the neighborhood.

Brandon Bolhous, a special education teacher at Yeatman School, testified at the trial that he saw an individual wearing a white hoodie shoot Brown and Robinson. He could not identify the shooter because he could not see his face from where he was looking.

Defense counsel called two witnesses at the trial. Essie Floyd, movant's mother, lives at 4229 Holly Avenue near Yeatman School and approximately ten or eleven houses from the intersection of Holly and Carter. She said she heard gun shots and saw a young man running towards her with a white hoodie on his head. The man cut through a couple of yards before he got to her house. She then ran in the house to the back to look out the back door, and she saw the man cut through a yard, across an alley and then she lost sight of him. Ms. Floyd said she did not get a good look at his face, but it was not her son as her son was taller. When asked if she was sure it was not her son she said, "No, it wasn't him." Ms. Floyd said movant had been living at her house until he moved out a couple of weeks prior to the shooting to move in with his girlfriend who lived in Maryland Heights, or St. Charles, "Somewhere out there, St. Charles or somethin'."

Tonya Washington, movant's girlfriend, testified that she lived on Gary Court in St. Charles. She said she drove a white Pontiac G6 without tinted windows, movant also drove the car and movant was arrested in the car near his mother's house. Ms. Washington said she went to work at Park Place Senior Living in O'Fallon, Missouri in St. Charles County from 8:00 a.m. until 4:00 p.m. on the day of the murder, and she did not know where movant was during that time. She said movant stayed at home at the apartment and did not ride with her to work that day. She did not lend her car to anyone that day and when she got off work at 4:00 p.m., her car was still on the lot at work. She left work, picked up her children, and went home where she picked movant up and drove down to his mother's house. When they got to his mother's house they saw a bunch of police cars and were told somebody had been shot.

The State called Detective Hanewinkel as a rebuttal witness. The detective said that after he advised movant of his <u>Miranda</u> rights movant spoke with him. He said he had been with Ms. Washington from the night before the shooting and had stayed with her the whole day and night of March 11th, the day of the shooting. The detective said movant had been somewhat vague but said "we watched television, we ate." The detective asked for Ms. Washington's phone number or address so he could contact her and movant said she had just moved and he did not know her address or phone number.

˘- 15 -˘

Defense counsel argued in his closing argument that Ms. Abram could not possibly have seen what she claimed to have seen from where she said she was at the time of the shooting, and she could not possibly have seen the shooter's face.

After movant was sentenced he was questioned about the assistance provided by Mr. Yarns. When asked whether he had witnesses and whether Mr. Yarns contacted them, he said he provided contact information but did not tell Mr. Yarns what the witnesses would have said. One of the persons was his next door neighbor, Moses. Movant said he did not know what Moses would have said, but "by him bein' an eyewitness and seein' the person that did it." Movant said his prior attorney, Courtney Harness, had spoken with Moses. Movant also said he gave the name of a school officer, Officer Graham, to Mr. Yarns. Mr. Yarns said the case had been basically prepared when it was assigned to him and he had the information on the witnesses who had been contacted. He said he had all the information, and the witnesses he decided to call were the ones who were at the trial. When asked whether, based on his years of experience he had called the witnesses he thought would be helpful, he said he had.

The Court finds that movant is not entitled to a hearing or relief based on his claim regarding Ms. Henderson would allegedly would have testified that someone named "T-Dub" had threatened to kill Virgil Robinson at some unspecified time. This testimony, consisted of inadmissible hearsay. Such testimony, which would have merely cast suspicion on another, would not have been admissible and a failure to present such evidence would cause no prejudice. State v Schaal, 806 S.W.2d 659, 669 (Mo. banc 1991).

The Court finds movant is not entitled to relief based on the failure to call the remaining two witnesses because Mr. Yarns reviewed the witness information and decided which witnesses to call based on which witnesses he thought would be most helpful. The Court further notes that Mr. Yarns argued the shooter had his hoodie up and his face could not have been seen by the nearest witness; movant's own mother could not see the face of the shooter as he ran towards her to within a couple of houses; the allegation is vague as to where Mr. Briggs resided and how he could have had a better view of the shooter's face than movant's own mother; and, it is vague in the same regard as to the security guard who, it is alleged, "knows [movant] was not the shooter." The one witness movant complained about, Moses, is not listed in the amended motion. Counsel stated in the amended motion that an address for Ms. Henderson is not known.

(Resp.'s Exh. F, PP. 51-58). Petitioner advanced the claim on appeal of the denial of his Rule 29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

On appeal, Movant argues his trial counsel was ineffective for failing to call certain witnesses at trial. Specifically, Movant claims (1) Henderson would have testified that someone named "T-Dub" had threatened to kill Robinson; (2) Briggs would have testified he witnessed the shooting and saw the shooter was not Movant; and (3) Graham, a security officer at the school, witnessed the shooting and "knows [Movant] was not the shooter."

˘- 16 -˘

Movant alleged his previous counsel told trial counsel about these three people "so they could be called as witnesses" on Movant's behalf.

After sentencing, Movant told the trial court that he gave counsel the names and contact information of people he thought could testify on his behalf but that counsel did not contact them. Movant stated he did not discuss with counsel what these witnesses would say. Upon questioning, Movant stated his previous counsel told trial counsel about a man that lived next to his mother named "Moses" and he told counsel to contact Graham, but counsel did not do so. At that time, counsel stated the witnesses had been contacted and their information was completely prepared for trial when he received the case from Movant's prior counsel. Counsel stated he had that information and, using his judgment and experience, he called the witnesses at trial he thought would be helpful to the case.

To support a claim of ineffective assistance of counsel for failure to call a witness, a movant must show "'1) [t]rial counsel knew or should have known of the existence of the witness; 2) the witness could be located through reasonable investigation; 3) the witness would testify, and 4) the witness's testimony would have produced a viable defense.'" Worthington, 166 S.W.3d at 577, quoting Hutchison v. State, 150 S.W.3d 292, 304 (Mo. banc 2004). The decision not to call a witness at trial is presumptively a matter of trial strategy. McClendon v. State, 247 S.W.3d 549, 556 (Mo. App. E.D. 2007).

With regard to Henderson, her alleged testimony that someone else had threatened to kill the victim was inadmissible hearsay. Hearsay statements are out-of-court statements that are used to prove the truth of the matter asserted and, as a rule, are inadmissible. State v. Douglas, 131 S.W.3d 818, 823 (Mo. App. W.D. 2004). Henderson's proposed testimony was also inadmissible because it had no other effect than to cast bare suspicion on another. See State v. Schaal, 806 S.W.2d 659, 669 (Mo. banc 1991). Counsel cannot be said to be ineffective for failing to call a witness whose testimony was inadmissible.

Furthermore, the record demonstrates that trial counsel knew about the witnesses but did not call them as a matter of trial strategy. Movant alleged in his amended motion that trial counsel was advised about these witnesses by his previous counsel. At the sentencing hearing, trial counsel acknowledged he received all of the information as to all of the witnesses that had been contacted from Movant's prior counsel. Trial counsel stated the "[w]itnesses that [he] decided to call at trial were here at trial." Upon questioning by the court, counsel stated he called the witnesses he thought would help the case based upon his judgment and experience. Counsel's decision whether to call a witness is virtually unchallengeable trial strategy. Roberson v. State, 336 S.W.3d 216, 221-22 (Mo. App. E.D. 2011). Here, the record demonstrates counsel investigated the witnesses and did not call them at trial because, based upon his knowledge and experience, he did not believe they would unequivocally support the defense position. Id. (counsel's failure to call a witness is a matter of trial strategy and is not ineffective assistance when counsel believes a witness's testimony would not unequivocally support the defense position).

> Movant has failed to demonstrate his trial counsel was ineffective for failing to call Henderson, Briggs, or Graham as witnesses. Based on the foregoing, Movant's Point I is denied.

(Resp. Exh. I, PP.5-7).

Upon consideration, the Court finds that with this claim Petitioner fails to satisfy either prong of the *Strickland* test. With respect to deficient performance, the Court notes that during Petitioner's sentencing hearing, the trial court questioned Petitioner regarding his attorney's performance. Petitioner testified under oath that while he had given his attorney the name of those people he thought should be called as witnesses, he never revealed what those individuals would say if called to testify at trial. (Respondent's Exh. A, PP. 331-32). Furthermore Petitioner's attorney, Mr. Paul Yarns, stated that he used his judgment and the years of experience he had as an attorney to call those witnesses at trial that he thought would help Petitioner's case. (*Id.*, P. 334). The Eighth Circuit has "consistently….affirmed that a defense counsel's decision not to call a witness is a virtually unchallengeable decision of trial strategy." *United States v. Orr*, 636 F.3d 944, 955 (8th Cir.) (internal quotations and citations omitted), *cert. denied*, 132 S.Ct. 758 (2011). Mr. Yarns' decision not to call the witnesses thus fell within the wide range of professionally competent assistance sanctioned by *Strickland*. *See Becker v. Luebbers,* 578 F.3d 907, 920 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690) ("'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable'"), *cert. denied*, 561 U.S. 1032 (2010).

With respect to prejudice, the Court finds that under the instant facts it cannot be said that Petitioner was prejudiced by counsel's failure to call the cited witnesses. With respect to Ms. Henderson, both the post-conviction motion court and the Missouri Court of Appeals found her alleged testimony that someone else had threatened to kill the victim would have been inadmissible hearsay. Ms. Henderson's proposed testimony thus was inadmissible, and would have been

disallowed had Petitioner's trial counsel attempted to offer it. With respect to the other two witnesses, the state courts found that Petitioner's allegations were vague as to how the witnesses would better have been able to identify the shooter than Petitioner's own mother, who did testify at trial. Upon consideration this Court agrees, and thus it is unlikely the proposed testimony would have yielded a different outcome. Under these circumstances, the Missouri State courts' finding that the result of Petitioner's proceeding would likely have been the same even absent counsel's alleged error was not an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Ground 4 of Petitioner's § 2254 petition must therefore be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).


Dated this  15th  Day of January, 2016..


             /s/ Jean C. Hamilton
             UNITED STATES DISTRICT JUDGE